[2] But assuming that the order is within those provisions of the Code, or a mandate of the court within the provisions of the judiciary law (Judiciary Law [Consol. Laws 1909, c. 30] § 753; Code Civ. Proc. § 3343, subd. 2), I think it was necessary to serve the order upon the defendant personally to punish him for civil contempt in failing to comply therewith. It is true that this was a proceeding in the action, and that the court obtained jurisdiction of the defendant by the service of the summons upon him, and he had appeared therein by attorney so that any notice or other paper required to be served in the action must be served upon his attorney. Section 799 of the Code of Civil Procedure so provides, but section 802 provides that the article which contains sections 799 and 802 does not apply to service of a paper to bring a party into contempt. I am not aware that the appellate courts have passed upon the precise question here, but it has been held, and is now settled, that, in order to punish a party for contempt in failing to comply with an order for his examination before trial, it is necessary to personally serve him with the order. Tebo v. Baker, 77 N. Y. 33; Grant v. Greene, 121 App. Div. 756, 106 N. Y. Supp. 532.

[3–5] While I think notice of the application to punish the defendant for contempt was sufficiently served upon him by service upon his attorney (Pitt v. Davison, 37 N. Y. 235), or even if it was not that it was waived by the defendant's appearance upon the motion without objection, that, I think, does not overcome the lack of service of the order which it is claimed the defendant violated. If he is guilty of contempt at all, it is the violation of the order of July 26th which brings him into contempt, and that was not served upon him.

I think the order should be reversed and the motion denied, with $10 costs and disbursements. All concur except McLENNAN, P. J., who dissents.

---

LEWIS v. NEW YORK, O. & W. R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 11, 1911.)

1. MASTER AND SERVANT (§ 111*)—INJURIES—NEGLIGENCE.

Plaintiff and other employés of defendant railroad company opened a car load of hay to unload it, and when it was opened two of the bales, all of which were standing on end, fell upon plaintiff, injuring him. There were no cleats across the door opening to prevent the hay from resting against the door. *Held*, that defendant was not negligent because the bales were not laid down, instead of on end, or because of the absence of cleats.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215–217; Dec. Dig. § 111.*]

2. MASTER AND SERVANT (§ 233*)—INJURIES—CONTRIBUTORY NEGLIGENCE.

The danger in unloading was created by plaintiff and his coemployés by failing to use due care for their own safety when they opened the car.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681–742; Dec. Dig. § 233.*]

Spring, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Oswego County.

Action by Uriah H. Lewis against the New York, Ontario & Western Railroad Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

P. W. Cullinan, for appellant.

O. M. Reilly, for respondent.

KRUSE, J. A load of baled hay consigned to plaintiff's employer was being unloaded by the plaintiff and other workmen under his direction. After the door of the car was opened far enough, two bales fell, one after the other, striking the plaintiff and injuring him. The car was loaded by the consignor and transported by the defendant from the station where it was loaded to the station where it was being unloaded. The plaintiff seeks to recover for the personal injuries thus sustained by him, because, as he claims, the hay was not properly loaded. It is claimed that, instead of standing the bales on end, they should have been laid down and piled one upon the other, or that there should have been cleats across the door opening or false doors so as to prevent the hay from resting against the door of the car.

[1, 2] It does not seem that negligence can be predicated against the defendant in the way the hay was loaded in the car. So far as there was any danger of the hay falling from the car, the dangerous condition, as it seems to me, was created by the men in unloading. I do not see how it would make it any safer to pile one bale upon another, if piled as high as a bale standing on end; nor is it clear to me how, as to the unloaders, cleats across the opening or a false door would have made any difference, for the cleat would have had to be removed or the door opened in order to get the hay out. Of course, the situation and danger might be more apparent to the unloaders, but it would have been apparent to the plaintiff and his men here if they had looked. The door had been opened sufficiently wide before the hay fell, so it could be seen that the bales were standing on end, and that there was no cleat or false door to keep the hay back from against the door. It would seem that, if the plaintiff and his men had been reasonably careful for their own safety in the work of unloading the hay, the accident would not have occurred.

I think the judgment and order must be reversed and a new trial granted, with costs to the appellant to abide the event. All concur, except SPRING, J., dissenting.

SPRING, J. (dissenting). Each bale of hay was about 4 feet and 2 inches long, 2 feet wide, and 22 inches thick, weighing a little over 200 pounds. They were placed in the car standing on end, in two tiers one on top of the other. The car was well filled, and, as testified by one witness, "there was just room enough to shut the door; piled just so close he couldn't slide the door." And by another

witness, "The hay rubbed on the door when I opened it at the top." The door was fastened and sealed by the station agent of the defendant, but there was no inspection as to the manner of loading by him or by any one on behalf of the defendant. Nor had there been any rule promulgated by the defendant providing for a method of loading baled hay in its cars.

The car was left by the defendant on a switch track in the yard of the consignee, and the plaintiff with a man named Loveland attempted to unload it. The car door stuck fast, and the plaintiff put his hands against the lower part of the door, and which was about four feet from the ground and up about as high as the plaintiff's shoulders, and attempted to push it open. He succeeded in pushing the lower part along about a foot, but was unable to crowd it further. Loveland then got up in the opening partly in the car and pushed against the door, and Hammond, an employé of the defendant, took hold of the brace or handle on the other end, and the three together moved it along. Loveland, evidently observing the bales of hay adjacent to the door and leaning against it were about to fall, jumped, telling the plaintiff to "Look out." Following Loveland came one bale of hay which struck the plaintiff on the back, knocking him to the ground, and the second bale also fell upon him while he was upon the ground, breaking his leg and seriously injuring him.

It is the claim of the plaintiff that the hay was improperly loaded; that there should have been a rule of the defendant prescribing the manner of loading, or at least it should have been inspected by the defendant. The defendant, on the other hand, contends that it had a right to rely on the shipper of the hay to load it properly, and that there was no obligation upon it to inspect or to provide any rule as to the manner of loading. I think the jury were well justified in finding that the hay was improperly loaded. There is plenty of evidence showing that the bales of hay should either be placed flat in the car, or, if the bales in one tier stand up the long way on top or along side of these bales, there should be a tier lying flat down to hold them in place, and this would look reasonable. It seems clear that where two bales of hay, each over four feet in height, with an uneven base of from 22 to 24 inches, are placed on top of each other, making a pile 8 feet high, that a very little jar would cause them to fall. If these bales were piled close to the car door and leaned very slightly against it, as soon as the door was opened, inevitably they would fall out. Common sense ought to indicate that it is improper and dangerous to place these bales standing out of plumb close against the door so that it must rub against them when opened. At least two of the witnesses on behalf of the defendant testified on cross-examination in effect that it was dangerous to pile bales of hay in tiers standing on end, one on top of the other.

Again, I think it was the duty of the railroad company to inspect these loaded cars before they were shipped away. It could not delegate its duty as a common carrier to the shipper of this hay. As soon as the hay came into its custody for transportation, its

liability as a common carrier began (Ames v. Fargo, 114 App. Div. 667, 99 N. Y. Supp. 994; London v. Lan. F. Ins. Co. v. Rome, W. & O. R. R. Co., 144 N. Y. 200, 39 N. E. 79, 43 Am. St. Rep. 752); and it cannot absolve itself from liability upon a claim that the shipper was liable instead of it. If that rule were to obtain, the defendant could be relieved from liability to a third party, or its servants, very easily. I think a rule could readily have been adopted to regulate the manner of piling hay and its enforcement would have prevented this accident, and the obligation was imposed upon the defendant to exercise reasonable precautions to insure the safety of those who were to unload this hay. Ford v. L. S. & M. S. R. R. Co., 124 N. Y. 493, 26 N. E. 1101, 12 L. R. A. 454; Van Alstine v. Standard L. H. & P. Co., 128 App. Div. 60, 112 N. Y. Supp. 416, and cases there cited.

It is claimed, also, by the defendant that the plaintiff has failed to show freedom from contributory negligence. He was standing stooped over, pushing the lower part of the door which reached to his shoulders. He was devoting his whole attention to that business as the door was binding so that it was difficult to push it along. Assuming, as he testified, that he noticed that the hay was standing on end, he knew nothing about how high it was piled, nor did he realize that it was resting against the door or that he was in any danger. Even Loveland, who got up in the car to push the door at the top, did not apprehend the danger.

The plaintiff's conduct must be judged by that of any man of ordinary prudence engaged in the same kind of business. One thing was occupying his attention, and that is, pushing the door. He supposed he was in a place of safety, and had a right to assume that the hay was properly loaded. He certainly had no reason to expect that as soon as the door was pushed open, and which was the only place for taking out the hay, that these heavy bales would begin to topple out. I think the question of his conduct was for the jury.

There is no question before us of the weight of the evidence, and we ought not to hold as matter of law either that the defendant was not negligent or that contributory negligence is imputable to the plaintiff.

I think the judgment should be affirmed.