# ENTSMINGER v. YAZOO & MISSISSIPPI VALLEY R. CO.

### No. 10677.

Circuit Court of Appeals, Fifth Circuit.

May 22, 1944.

Rehearing Denied June 26, 1944.

H. Alva Brumfield, Jr., A. Leon Hebert, Jr. and Fred G. Benton, all of Baton Rouge, La., for appellant.

H. Payne Breazeale, of Baton Rouge, La., and Arthur A. Moreno, of New Orleans, La., for appellee.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

LEE, Circuit Judge.

This is a suit by Robert L. Entsminger against Yazoo & Mississippi Valley Railroad Company for damages for personal injuries. The case was tried to a jury. At the close of the evidence the Court, upon motion filed by defendant, directed a verdict in its favor. From the judgment entered thereon plaintiff appealed. The decisive question is whether the evidence made out a case for determination by the jury.

Appellant, an employee of the Oman Construction Company, was seriously injured while assisting in unloading a car of creosoted poles shipped to that Company over the railway lines of the Yazoo & Mississippi Valley Railroad Company. The shipment was loaded on a flat car by the consignor and consisted of some eighty to ninety poles weighing approximately 72,000 pounds. The poles extended generally the length of the car and in some instances, beyond. They were held in place by upright stanchions placed in steel cups, four to each side of the car, tied by wires stanchion to stanchion across the top of the load, and steel bands were placed around the poles near the center of the car to bind and hold them together.

The car, upon delivery to the Oman Construction Company in Clinton, Louisiana, was unloaded under its direction in this manner: The two middle stanchions on the right or south side of the car were removed, and the two remaining stanchions on that side were cut near the base about half in two. The unloading crew, of which appellant was a member, then moved to the left or the north side of the car and cut the steel bands around the center of the poles. Appellant, equipped with an axe, and another member of the crew, equipped with long-handled clippers, were then placed one at each end of the car to cut the wires binding the tops of the end stanchions. Simultaneously they cut the wires binding the stanchions at both ends of the car. Immediately the four stanchions on the side where appellant was standing and the two on the opposite side broke, and the poles rolled off both sides of the car. Appellant was caught by falling timbers and suffered serious bodily injuries.

Some months later he filed this suit against the Railroad Company to recover damages in the sum of $50,000 on the theory that the accident was attributable directly to the sudden and unexpected breaking of four solid stanchions on the left or north side of the car, resulting in some of the poles falling on him on that side, and, that the reason for the breaking of said stanchions was the fact that three of them were of soft wood, when under the customary practice, as well as the rules governing the loading of timber upon open-type cars such as the one involved, all should have been of hard wood. In his brief he states his cause of action substantially as follows: The proximate cause of the accident was the failure on the part of the shipper and the carrier to provide hardwood stanchions, and such defect could have been readily determined by any inspector versed in such matters upon an ordinary inspection. He further says: "Appellant's complaint shows several charges of negligence against appellee. Only two need to be considered. First, appellee made no reasonable inspection of the car during the loading process or thereafter or at any time. Second, the said stanchions were defective."

The evidence established that the customary mode of loading the car with logs for shipment was complied with in this case. The rules and regulations of the Association of American Railroads call for the use of hard-wood stakes or stanchions. That hard-wood stanchions were used in loading this car was proved beyond' question.

It is true that two of appellant's witnesses testified that three of these stanchions were of soft wood. One of these witnesses, when called on to state the character of the timber, failed to do so, replying only that they were of soft wood. This witness, who was the superintendent of the consignee, testified:

"A. The only thing that I could see was that four standards just did not have the strength necessary to hold the poles. There were three soft standards and one oak standard.

"Q. Ordinarily what kind of timber were those standards made of? A. Ordinarily hard-wood,—I would not say every time, but ordinarily hard-wood * * *.

\* \* \* \* \*

"Q. You are positive three of those particular standards were made of gum? A. They were soft wood.

"Q. Soft wood? A. Yes, sir.

"Q. And one of oak? A. Yes, sir."

594

The other witness, a member of the unloading crew, testified:

"Q. What did you find about the quality of wood the stanchions were made out of? A. We found one of oak and three soft ones.

\* \* \* \* \*

"Q. What sort of stanchions were they? A. They were three soft wood.

"Q. What do you mean by soft wood? A. Gum \* \* \* and one oak."

The superintendent of the consignor testified that his Company in loading the car followed the rules and regulations of the Association of American Railroads and that the stanchions used were of hard wood. When called upon to state the character of timber, he said that these stanchions were of gum and oak. The superintendent was asked:

"Q. Based upon your experience in the lumber business, how is gum wood classified? A. It is hard wood."

Thereupon, one of the attorneys in the case said: "The stipulation is that it is hard wood." No one excepted to this statement, and the Court added: "It is a matter of common knowledge to the members of the jury too." This evidence was nowhere disputed or challenged, and leads to the conclusion that the stanchions upon which appellant relies to show negligence were unquestionably of gum, and that gum concededly is hard wood. We think it clear, therefore, that the charge of negligence based upon the use of soft-wood stanchions, contrary to custom and the rules and regulations, is without support in the testimony.

The charge that appellee failed reasonably to inspect the car is likewise without support in the evidence. The car was inspected at the plant of the consignor; it was inspected by each of the two conductors of appellee's trains which hauled the loaded car from Crosby, Mississippi, to Clinton, Louisiana; it was inspected by the station agent of appellee in Clinton, Louisiana; and it was inspected before it was unloaded by the superintendent of the consignee, the employer of appellant. All stated that the car was in good condition. Upon this phase of the case, the appellant's proof utterly fails.

The cases cited by appellant which hold that appellee was charged with the duty reasonably to inspect the car and which hold that the stanchions are a part of the car equipment, are not in point under the facts. Reasonable inspection was made and regulation stanchions were used.

Judgment affirmed.