**UNITED STATES STEEL CORPORA-TION, Appellant,**

v.

**Hugh McCRANEY, Appellee.**

**No. 17152.**

United States Court of Appeals
Fifth Circuit.

June 30, 1958.

458

Bruce C. Aultman, Hattiesburg, Miss., for appellant.

Leonard B. Melvin, Jr., Leonard B. Melvin, Sr., Harold W. Melvin, Laurel, Miss., for appellee. Melvin, Melvin & Melvin, Laurel, Miss., of counsel.

John S. Burchmore, Robert N. Burchmore, Chicago, Ill., for The Nat. Industrial Traffic League as an amicus curiae. Burchmore, Good & Bobinette, Chicago, Ill., of counsel.

Before HUTCHESON, Chief Judge, and JONES and WISDOM, Circuit Judges.

HUTCHESON, Chief Judge.

The suit was for damages for personal injuries received by plaintiff, an employee of O & E Trucking Company, who was injured while unloading for the consignee at Laurel, Mississippi, a shipment of casing or pipe which had been loaded by the defendant at McKeesport, Pa., and consigned to Larco Drilling Co.

The claim was that the defendant was negligent in the discharge of its duty in loading said car to use safe stakes or standards which were strong and substantial enough to hold the casing and/or pipe in place.[1]

The defendant answered, admitting that the car was loaded by it. Denying: that in loading it, it disregarded or violated any duty owed the plaintiff by it; and that the defendant failed to properly place the stakes or standards in the car;

---

[1]. As set out in detail in the complaint, the allegations were: That these stakes should be equally and properly fitted into stake pockets or securely wedged to car sides and securely bound by wire so as to hold in place the stakes and permit the car to be safely unloaded; that the defendant, United States Steel Company, disregarded its duty and negligently loaded said casing and/or pipe on the car by failing to properly secure and fasten the stakes or standards on said gondola car in such a manner as to prevent said stakes or standards from becoming separate and apart from the gondola car which casing and/or pipe was being unloaded and the defendant failed to properly secure, place and tie the stakes or standards so that said car could be safely unloaded and failed in its duty to furnish plaintiff a safe place to work while engaged in his duties as aforesaid.

That plaintiff, an employee of O & E Trucking Co., was directed by his employer to unload the casing and/or pipe, and that in attempting to do so in the customary and usual way, that is, by getting into the end of the gondola car and attaching the tongs from the crane to the casing, the plaintiff, while exercising reasonable care, climbed into the open end of the gondola car and in the usual and customary manner proceeded, as he was directed and required to do, to tong the ends of the casing and/or pipe; that as soon as the plaintiff reached the bottom layer of casing and/or pipe, the stake or standard on the end nearest plaintiff, and which was not properly attached, fell over, striking the plaintiff and throwing him violently to the floor of the gondola car, crushing and causing severe and painful injuries to the plaintiff.

it affirmatively alleged: that the car was properly and safely loaded; that all stakes were of substantial quality; and that they were placed and properly wedged to the side of the car by the lading in compliance with the loading rules of the American Association of Railroads and with methods and standards of practice and customs adopted long since and which have become a customary part of the procedure of loading and unloading steel pipe.

2. Appellee was 57 years of age when he testified as a witness, which would have made him approximately 54 on the date of the accident. On the day of the accident he arrived for his work in unloading the car situated on a siding at Bolton, Mississippi, at about 6 o'clock A.M., and arriving in the same automobile with the foreman and Billy Creel. He was employed by the O & E Trucking Company at the time. Other members of the crew were Creel, Woodrow Walter, Earl McCraney, a man named Blackledge, and Walsworth, the foreman.

Upon arrival appellee noticed that the top two layers of pipe had slipped toward the east end of the car, but the bottom layers were, as the witness described them, "normal". The standards were standing up with wires being bound to them across the load. According to the claimant, there were five pairs of these stakes. Walters and Creel cut the top wires and the crew proceeded to unload the car.

In the unloading process a winch was used, and a hook was placed in each end of the hollow tubing, and the pieces of tubing so hooked was lifted out of the railroad car and placed on the truck transporting it away from the gondola car to the place where it was used by the consignee. Claimant and Blackledge got into opposite ends of the railroad car as directed by their foreman, and placed the hooks into the open end of the pipe, claimant occuping the west end of the car and Blackledge the east end.

The crew began moving steel from the side of the gondola car closest to the truck onto which it was being reloaded. The pipe was removed one piece at the time and layer by layer. The crew continued thus to unload from the gondola and onto the truck. The stakes supporting the steel in the gondola car and located on the side nearest the truck were pulled down by the crew by use of the winch, but those on the other side were left standing. When claimant hooked

The defendant further denied that the unloading procedure employed by plaintiff's employer and plaintiff was customary and usual, and particularly alleged that at the time of plaintiff's injury the unloading procedure on the part of plaintiff's employer and of plaintiff was negligent and was the sole proximate cause of plaintiff's injury.

At the conclusion of plaintiff's evidence,[2] which was substantially without

the last piece of pipe on the second layer from the bottom, he gave a hand signal to the operator of the winch and when the winch picked the pipe up, the standard in the end of the car, and against which the pipe being moved had rested, fell against the claimant inflicting the injury complained of. Over appellant's objection, appellee testified that there was no way to ascertain whether or not the standard was fastened prior to unloading. He testified additionally concerning the extent of his injuries.

Appellee had no experience in loading cars, and his experience with handling steel is limited to unloading and truck transport activities. *His activities and methods were designated and directed by Walsworth, foreman for O & E Trucking Company.* The employer required the crew to wear safety shoes, but did not require nor provide helmets. *After the top wires were cut and some of the pipe removed, the crew pulled down the stakes on the side of the gondola car nearest the truck onto which the pipe was being reloaded, but did not remove those on the opposite side but permitted them to remain standing until the accident occurred.* Prior to hooking the last piece on the second layer, appellee said he could see to the bottom of the car on that side, but could not see what was under the last layer. He had no difficulty in seeing the exposed stakes as thus shown to the bottom of the car, and could see the stakes in their entirety above the second pipe from the bottom immediately before the accident occurred.

When claimant entered the car at the inception of the process of unloading and reloading, he knew that the pipe had shifted so much that the two top layers were over the end gate of the gondola. He knew this condition had occurred in shipment. He had never seen pipe shifted quite this much in shipment on any previous occasion, and he testified that he conceived it to be the duty of the rail-

dispute and showed: *that no safety examination of the car was ordered and none was made prior to or in the course of unloading it; that no safety equipment was provided for the unloading crew; and that after the top wires were cut and some of the pipe removed, the crew pulled down the stakes on the side of the gondola car nearest the truck onto which the pipe was being reloaded but did not remove those on the opposite side, permitting them to remain standing until the accident occurred; defendant moved for an instructed verdict.*

This motion denied, defendant, requesting the court to take judicial knowledge of Title 49 U.S.C.A. offered in evidence the rules of the American Association of Railroads adopted pursuant to congressional injunction, and then offered six witnesses, including Charles Hannegan, the shipper employed by appellant to load the car. Testifying from a memorandum, he described in detail the manner in which the car was loaded, and that it was done in compliance with the rules of the American Association of Railroads. He also *testified that the car in question had no stake pockets and that few do.* On cross-examination, he explained that the *standards are intentionally not fastened to the side of the car so that they may remain attached to the load in transit and that the stakes are bound with the load of pipe and not with the car in order that they may float with the load and within the car during shifting movements of the train.*

The other witnesses for the defendant corroborated and confirmed Hannegan's testimony that the car had been loaded in the usual and proper way.

At the conclusion of this testimony, defendant's motion for instructed verdict was renewed and denied, and the case was sent to the jury on a charge to which no objections or exceptions were made, and there was a verdict and judgment for plaintiff. Appealing therefrom, defendant abetted and aided by a well considered brief filed amicus curiae by the National Industrial Traffic League, insists: (1) that the proper method of loading cargo is fixed by the rules of the American Association of Railroads and the evidence conclusively established compliance therewith; (2) that no measure of care or standard of conduct different from that so prescribed was contended for or shown; (3) that the evidence shows as matter of law that the accident was caused by conditions arising after the loading and railroad journey of the car, which operated as effective and intervening factors, after loading and consignment, for which the appellant had and could have no responsibility; and (4) that the effect of the judgment is to impose upon appellant as a shipper of the goods the liability of an insurer.

Assigning in various forms the single error, that the district judge erred in denying its motion for instructed verdict and for judgment in its favor, and arguing that the testimony of its witnesses that the car was properly loaded, standing uncontradicted by any contrary testimony, may not be rejected by the jury,[3] appellant insists that the judgment should be reversed both because defendant proved compliance with the official rules[4] and plaintiff failed to prove that

---

road to reload the pipe when it was shifted as badly as it was in this car.

Appellee testified that he made no examination of the car to determine whether or not the standards were fastened, even though there was nothing to prevent his doing so if he had chosen so to do.

3. 20 Am.Jur., 1030, Sec. 1180, "Evidence"; 32 C.J.S. Evidence § 1038, p. 1089; Stewart v. Coleman & Co., 120 Miss. 28, 81 So. 653; Wilson v. Blanton, 130 Miss. 309, 94 So. 214; Ryals v. Douglas, 205 Miss. 695, 39 So.2d 311; Lucedale Ve-

neer Co. v. Rogers, 211 Miss. 613, 53 So.2d 69; Hulett v. Jones, 220 Miss. 827, 72 So.2d 204. To which may be added Arnall Mills v. Smallwood, 5 Cir., 68 F.2d 57.

4. Entsminger v. Yazoo & Miss. Valley R. Co., 5 Cir., 142 F.2d 592; Anderson v. Southern Ry. Co., 4 Cir., 20 F.2d 71; Stokes v. Burlington-Rock Island R. Co., Tex.Civ.App., 165 S.W.2d 229, 232; Mahutga v. Minneapolis, St. Paul & S. S. M. R. Co., 182 Minn. 362, 234 N.W. 474, certiorari denied 283 U.S. 847, 51 S.Ct.

defendant was guilty of negligence in loading the car, and because if there was negligence, it was not the proximate cause of plaintiff's injuries.

Urging upon us that the evidence shows as matter of law that the acts and conduct of plaintiff's employer and plaintiff, in failing to take proper precautions and in using unsafe and improper unloading methods, was in law and in fact the cause of plaintiff's injury, appellant points with conviction to the uncontradicted proof that no examination was made of the condition of stakes and load before and as the steel was unloaded and, in emphasis of this, to the fact that while the stakes on one side of the car were pulled down in the course of the unloading, the stakes on the other side were not pulled down at all but were left standing with no examination being made or warnings given as to them by plaintiff's employer and no precaution taken by it against their falling in the course and as a result of the unloading.

Arguing that appellant could not, and should not, as appellee claims it should, have permanently fastened the stakes to the side of the car because this, due to the straining and shifting of the load with the movement of the car would be unsafe and improper loading, appellant, citing in support Southern Ry. Co. v. Edwards, 5 Cir., 44 F.2d 526; Anderson v. Southern Ry. Co., 4 Cir., 20 F.2d 71; Reed v. Missouri, K. & Tex. R. Co., Mo., 239 S.W.2d 328; Fisher v. Minneapolis & St. L. Ry. Co., 8 Cir., 199 F.2d 308; Union Tank & Supply Co. v. Kelly, 5 Cir., 167 F.2d 811, 815, 816; presents the further argument that if in any respect the loading was not as matter of law entirely proper, the injury claimed was not foreseeable and, therefore, did not in law proximately result therefrom because the loader was entitled to assume that the

consignee would make proper arrangements and have proper precautions taken against injury, including therein the lowering of the stakes before completing the unloading, and, if these had been taken the injury would not, indeed on the undisputed evidence could not, have occurred.

On its part, appellee, arguing the case as though it presented simply questions of fact for the jury, one, whether the defendant was negligent and its negligence was the proximate cause of the injury, the other, whether plaintiff was also guilty of contributory negligence, insists that while evidence as to the requirements of the American Association of Railroads was admissible, proof of compliance with these requirements was not conclusive on the question of due care, and it was for the jury to say whether, taking the evidence as a whole, plaintiff had made out a case of improper loading.

Insisting that appellant's cases are not in point, appellee, citing cases of his own,[5] meets appellant's insistence, that the evidence established as matter of law that the proximate cause of the injury was not the negligent loading of the steel by the defendant but its negligent unloading by plaintiff and his employer, with the contention that, under the evidence, this was a question of fact for the jury.

A careful examination of the record, as the briefs present and discuss it, and of the cases cited and relied on by both parties convinces us: that no case for a jury was made out; that a verdict should have been directed for defendant; and that the judgment should be reversed. This is so because it was established as matter of law, and the evidence required an instruction, that the car was loaded in accordance with the rules of the American Association of Railroads, and

494, 75 L.Ed. 1456; Lancaster v. Allen, 110 Tex. 213, 217 S.W. 1032. Cf. Wintersteen v. National Cooperage & Woodenware Co., 361 Ill. 95, 197 N.E. 578, 582.

5. Colbert v. Holland Furnace Co., 333 Ill. 78, 164 N.E. 162, 60 A.L.R. 353; Winter-

steen v. National Cooperage & Woodenware Co., 361 Ill. 95, 197 N.E. 578; Mississippi City Lines v. Bullock, 194 Miss. 639, 13 So.2d 34, 145 A.L.R. 1199; Stewart v. Kroger Grocery Co., 198 Miss. 371, 21 So.2d 912; American Creosote Works v. Harp, 215 Miss. 5, 60 So.2d 514, 35 A.L.R.2d 603.

therefore was not negligently loaded. It is so, too, because, under the undisputed evidence, there was no latent or hidden defect in the loading, and if the slightest precautions with regard to the stake which fell on plaintiff had been taken by plaintiff's employer and by him, such as pulling it down and removing it, a precaution which had in fact been taken on one side of the load, the injury could not have occurred. Appellant was entitled to assume that reasonable care would be exercised by the consignee and his servants and agents in unloading the car, and, as matter of law, defendant could not have foreseen that the loading, which had no hidden or latent defects and which had fully served its purpose to keep the load in place and bring it without injury to its destination, could be a cause of harm to the employees of the unloader. We think, in short, that under this evidence, which showed conclusively and as matter of law that the use of a simple precaution such as taking the stakes down before all of the pipes which held them in place were moved, would have prevented the injury, the principle to be applied here is that the duty of care imposed upon the defendant was to load the car so that, when it reached destination, there would be no hidden defects in the loading, and that the consignee could, by the exercise of proper care, safely remove the lading. It owed no duty to the unloaders to see that in unloading proper safety measures were taken; this duty rested on the consignee and its employees. To hold otherwise would, in our opinion, be to impose upon the loader the responsibility of an insurer.

What probably has complicated and confused court and counsel in this case is the view that under Mississippi law, instead of contributory negligence constituting a complete defense, the mere contributory negligence of the plaintiff is not a defense to liability in the suit but merely mitigates the damages, and in a case *where contributory negligence as such is the sole defense, plaintiff can admit his own negligence and nevertheless recover something.*

The issue of the case presented here, however, does not turn upon the contributory negligence vel non of the plaintiff but upon the negligence vel non of the defendant, which includes the foreseeability of the event. Under settled law, the loader of a shipment has the right to assume that the consignee or those who are in charge of the unloading for him will take proper precautions to avoid injury, and where, as here, it appears that plaintiff's injury was not due at all to negligence in the loading but solely to the failure of plaintiff's employer and of the plaintiff to take proper precautions in unloading, it must be held, as matter of law, that defendant was not negligent. Stewart v. Kroger Grocery Co., 198 Miss. 371, 21 So. 2d 912, 914, one of the Mississippi cases cited by appellee, makes this precise distinction. Stating: "When the proximate cause of the injury is the failure of the employees to use the instrumentality in the normal or proper way, that failure goes to the entire cause of action, not to a mere diminution of the damages. Compare Aponaug v. Hammond, 185 Miss. 198, 187 So. 227." The court held that no case was made out against the defendant. Cf. Fisher v. Minneapolis & St. L. Ry. Co. and Union Tank & Supply Co. v. Kelly, supra.

The judgment is Reversed and here Rendered for defendant.