**Warren J. WRIGHT, Appellant,**

v.

**B. F. HUNTLEY FURNITURE COMPANY, Appellee.**

**No. 8487.**

United States Court of Appeals Fourth Circuit.

Argued Jan. 12, 1962.

Decided Feb. 19, 1962.

Robert M. Bryant, Winston-Salem, N. C., for appellant.

Ralph M. Stockton, Jr., and W. F. Maready, Winston-Salem, N. C. (Hudson, Ferrell, Petree, Stockton & Stockton, Winston-Salem, N. C., on brief), for appellee.

Before SOPER and BOREMAN, Circuit Judges, and PREYER, District Judge.

PREYER, District Judge.

The plaintiff was injured when he opened a boxcar and was struck on the head by a falling carton which was loaded on top of other furniture packed in the car. Plaintiff contends his injuries were caused by the negligence of the defendant in improperly loading the boxcar. The case was tried by the court below without a jury, the court ruling that there was no primary negligence on the part of the defendant, and that in any event plaintiff was guilty of contributory negligence. Plaintiff challenges the correctness of the trial judge's rulings.

On the morning of the accident, the plaintiff was assigned to check a carload of furniture consigned to his employer and located beside a loading platform at a warehouse of his employer. He opened the door of the railway car on the side toward the warehouse, looked in and saw that the car was fully loaded and that the furniture was packed solid against the door on the warehouse side. The plaintiff then went around to the opposite side of the car and proceeded to open the door on that side. After he had opened the door about a foot, it stuck because of the rust on the runners.

He loosened the door with a crowbar. He looked inside the car and saw that the load of furniture extended to this door of the car also. He then pushed the door open to its full breadth without looking up. As soon as the door was fully opened, a carton fell out of the boxcar and struck him on the head. After the plaintiff regained consciousness, he looked up to the top of the car and could see the vacant spot from where the carton had fallen and could see several other cartons ready to fall. It is stipulated that the car was loaded and sealed by the defendant before being turned over to the carrier.

■ Plaintiff contends at the outset that the trial court committed error in refusing to apply the doctrine of Res Ipsa Loquitur. But it seems clear that the doctrine has no applicability where a shipper is charged with negligence in the loading resulting in an injury at destination. Fisher v. Minneapolis & St. L. Ry. Co., 199 F.2d 308 (8 Cir.1952); Butler v. Norfolk Southern Railway Company, 140 F.Supp. 601 (E.D.N.C.1956). In the case cited by the plaintiff applying the doctrine, the suit was against the railroad rather than the shipper, and there was, therefore, some arguable basis for holding that the railway car in question was under the control of the railroad at the time of the accident. Chamberlain v. Southern Railway Company, 159 Ala. 171, 48 So. 703 (1909). The railway shipment in the instant case was transported by six different railway carriers before it reached its destination ten days later. At the time of the accident complained of, the shipment was under the exclusive control of the plaintiff and his employer. The doctrine of Res Ipsa Loquitur does not apply "when the instrumentality causing the injury is not under the exclusive control or management of the defendant." Lane v. Dorney, 250 N.C. 15, 108 S.E.2d 55 (1959). We think the trial judge correctly ruled that the doctrine does not apply in this case.

■ Plaintiff does not contend that other errors of law were committed during the trial of the case but complains of the conclusions reached by the trial judge from the evidence. We are, of course, bound by the findings of the trial court unless they are clearly erroneous. United States v. Yellow Cab Company, 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150 (1949).

■■ Plaintiff contends that the evidence requires the conclusion that this was a floating load—that is, a load made up of loose layers—and that proper loading technique requires that such loads be shored by a gate or other means. He introduced into evidence a pamphlet published by the Association of American Railroads with the title "Railway Regulations For Safe Loading of a Closed Car For Protection of Equipment." The pamphlet recommends that when incomplete, or floating, layers are loaded, "cross-bracing * * * should be used." Defendant's vice-president in charge of shipping operations testified that "we don't cross-brace floating loads." Conceding arguendo that this constitutes some evidence of improper loading, it does not compel a finding of negligence on the part of the defendant in the manner of loading the car. There is no showing that shippers were bound by the rules and regulations of the Association of American Railroads, nor any showing as to what extent these rules were available to or used by shippers. The test the defendant is required to meet is whether defendant's method of loading was adequate to permit the safe unloading of the car in the exercise of reasonable care. A shipper is required to load the car so that, when it reached its destination * * * "there would be no hidden defects in the loading, and that the consignee could, by the exercise of proper care, safely remove the lading." United States Steel Corporation v. McCraney, 257 F.2d 457 (5 Cir.1958). There was no evidence based on the independent recollection of any employee of the defendant as to how the particular car in question was loaded. Defendant contends that it was not notified of the claim against it until about 2 years after

the occurrence and was not in position therefore to furnish this specific evidence. However, there was ample evidence that the methods used by the defendant in packaging and loading railway cars are equal or superior to the methods customarily employed in the trade. The chief clerk in the freight department of the Norfolk and Western Railway, the initial carrier, stated that the rules of the Association of American Railways were not available through his office, and that safe loading methods and procedures were inspected in this area by the Southern Weighing and Inspection Bureau. He further testified that this was an agency set up by the railroads for the purpose of policing and inspecting loading methods and procedures employed by shippers. The production manager of defendant stated that his company employed the standards of the Southern Weighing and Inspection Bureau, and that these standards were customarily employed by all other furniture manufacturers in the area. Of course, the fact that it was customary in the trade to ship furniture in this manner would not excuse the defendant, if the evidence justified the conclusion that the manner of shipping was highly dangerous and created a hidden danger to those unloading the car. But there was no such evidence here. The evidence indicates that six different carriers transported the boxcar to its destination. What caused the cartons to become loose in shipment lies in the realm of speculation. However, we think the trial court correctly concluded that "there is no evidence which disclosed in any particular that the car was so negligently loaded that it could not be safely unloaded, and it is concluded that the evidence fails to disclose any form of negligence on the part of the defendant company or its employees." Anderson v. Southern Railway Company, 20 F.2d 71 (4 Cir. 1927).

■ We think that the evidence also justifies the conclusion of the trial court that the plaintiff was guilty of contributory negligence. Defendant contends that the loose cartons constituted a latent or hidden defect which was not discoverable in the exercise of ordinary care until the door was opened. But at the time his deposition was taken, the plaintiff stated that when he first opened the door from the warehouse side he could see that the load had shifted, and that the smaller pieces were on top. He also stated he knew shifting of loads while in transit to be a common occurrence. At the trial he testified differently, and stated that he did not believe he should have testified as he did when his deposition was taken. But it is certainly a permissible inference from all the evidence that with knowledge of the shifted load, he then went around to the opposite side of the car and proceeded to open the door to its full breadth and never at any time looked up. Plaintiff could have seen the danger if he had looked; he testified that after he regained consciousness he looked up and could see that "there were a couple more loose pieces ready to drop out." Plaintiff had been opening railway boxcar doors for Jordan Marsh Company, the consignee, for 15 years.

■ The cases reflect a judicial recognition of the fact that no railroad car can be so loaded as to insure against injuries to employees of the consignee in the unloading, and, conversely, that no railroad car can be so carelessly loaded that it cannot be carefully unloaded. Nashville Bridge Company v. Ritch, 276 F.2d 171 (5 Cir.1960); United States Steel Corporation v. McCraney, supra; Lewis v. New York O. & W. R. Company, 146 App.Div. 250, 130 N.Y.S. 917, affirmed 210 N.Y. 429, 104 N.E. 944. We think the evidence justifies the conclusion of the trial court that plaintiff failed to perform his role in this reciprocal relationship by exercising proper care for his own safety.

The judgment of the lower court is affirmed.

Affirmed.