STEWART *v.* KROGER GROCERY, ETC., CO.

(In Banc. April 23, 1945.)

[21 So. (2d) 912. No. 35850.]

W. C. Sweat, of Corinth, for appellant.

374

**Ely B. Mitchell,** of Corinth, and **Clarence Clifton,** of Memphis, Tenn., for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellee operated a grocery store and therein a meat market in Corinth. Appellant was employed therein as the butcher. The store was divided into two compartments, the front being the sales room, and to the rear the storage room. Between these rooms was an ordinary swinging door. When supplies were needed in the sales room, the employe immediately concerned would go through the swinging door to the storage room, and bring what was needed back through the same door.

For some time prior to the injury here complained of, a sack for the placing of soiled aprons and towels used by the employes was hung about five to seven inches from the opening side of the swinging door, and occasionally this sack would become so full of these soiled articles that it would distend beyond the facing and into the path of the door in its swing, or sometimes an apron or towel would protrude from the sack in such manner as to interfere with the free movement of the door.

On the occasion in question appellant needed a replenished supply of cheese at his counter, and the store being crowded with customers he went hastily to the storage room, procured a box of cheese about sixteen inches square, and taking it by a corner in each hand, with one corner next to the lower part of his body, and the opposite corner to the front, he went hastily to the door, using the corner of the box opposite his body as a means of contact with the door, and it happened, either by the

distention of the sack or by a towel or apron protruding therefrom, that the door was prevented from opening, with the result that the corner of the box next to appellant's body rebounded in such a way as to cause the injury of which appellant complains. He brought his action alleging that his employer had failed in its duty to him to furnish and maintain a safe place to work, which we will consider as being a complaint that the employer failed in its duty to furnish and maintain safe instrumentalities. On the trial the court granted the peremptory charge requested by the employer.

Appellee has advanced several points or courses of argument in support of the judgment. One of these, in effect, is that the sack mentioned was solely for the convenience of the employes, was a matter about which they were primarily concerned, and for the maintenance and supervision of which they and not the employer were charged, and that, moreover, in all the weeks and months that the arrangement had prevailed no injury or suggestion of injury from it had ever occurred, and the further course of argument is to invoke the rule stated in Vol. 2, A. L. I. Rest. Torts, Sec. 433, that the employer's conduct is not to be regarded as a substantial factor in bringing about harm to another when after the event and looking back from the harm to the actor's negligent conduct it appears highly extraordinary that it should have brought about the harm.

We turn, however, to familiar principles established by numerous cases in our own reports, cases so numerous that they may be cited by dozens and by scores, and these are that it is not the duty of the employer to furnish and maintain perfect appliances or even the best and safest. He is not obliged to exercise the highest degree of care to avoid injuries, nor any care to avoid injuries not likely to occur. His obligation is to use reasonable care, and what is reasonable care is largely determined in each case by the nature, condition and extent of the danger of the instrumentalities furnished to and main-

tained for a servant in his work, and the greater or lesser the danger the greater or lesser is the degree of care which must be taken. His obligation is not to make the appliance with which, or the place in which, to work absolutely safe, but reasonably safe, the nature, condition and extent of the danger considered. And withal the employer is liable only for the want of reasonable care in guarding against injuries which may be reasonably foreseen as likely to occur when his employe uses the instrumentality in the usual and normal way that such an instrumentality is intended to be used and if the employe adopts another method or way, the injury is one for which he and not the employer is responsible. It is not the duty of the employer to guard against improper or unusual methods of use by an employe, unless the improper use has become habitual among employes and the employer knows it. And all these rules are to have a practical, and not a technical or pedantic or censorious, application.

Swinging doors are of common use not only in business houses but in dwellings. Judicial notice is to be taken, therefore, of the proper or normal manner of their use, which is that when it is desired to pass through such a door, the user approaches it at an ordinary gait, not in a run, and puts one hand against its facing on the side opposite the hinges, gives a push or shove, and holds it open until passage is made. If in so doing the door fails to open for any reason, whatever the reason, all that would result would be a slight jolt to the user and a slight inconvenience, but no injury of any consequence as to extend beyond the rule de minimis, or if any real injury should happen it would be only as a possibility and not a likelihood, as to which all that is necessary to say is to cite Illinois Central R. Co. v. Bloodworth, 166 Miss. 602, beginning with the last paragraph on page 617, 145 So. 333.

If when the user approaches the swinging door he is carrying an article which requires the use of both hands

in the carriage, the proper and normal manner of use of the door is to turn the user's back or side to the door, and thus push it open, and if for any reason, whatever the reason, the door fails to open all that would result, in such a case, would be an inconvenience without even a possibility of an injury, since in turning the user's back or side to the door his forward progress would have come. almost to a halt. What the user did here, however, was, as stated, to use the box of cheese which he was carrying. as the instrumentality with which to open the door, ram-; ming it in haste against the door. This is the case that is before us and it was an improper use and procedure even if he had presented the square side of the box of cheese against the door, with the opposite square side against his body, which if done he would still not have been hurt; but he went further and took the corners of the cheese box in each hand and rammed one of the other corners against the door with the fourth corner against his body and it was this corner held against his body that produced the hurt.

The crucial question, then, is this: Would the injury complained of here have occurred had the employe used the instrumentalities in the proper and normal manner, to which the answer is in the negative; and since it was the employe who put in motion and followed through the improper use, the improper use became the proximate cause, relegating the condition of the sack to the position of a remote cause. Although one may be negligent yet if another acting independently and of his own volition, wrongfully or negligently puts in motion another and intervening cause which efficiently thence leads in unbroken sequence to the injury the latter is the proximate cause and the original negligence is relegated to the position of a remote and, therefore, a nonactionable cause. Negligence which merely furnishes the condition or occasion upon which injuries are received, but does not put in motion the negligent and wrongful agency by or through which the injuries are inflicted, is not the proxi-

mate cause thereof. Compare Mississippi City Lines v. Bullock, 194 Miss. 630, 639, 13 So. (2d) 34, 145 A. L. R. 1199.

Appellant appeals to the excuse of momentary forgetfulness. This is an issue which concerns contributory negligence, whereas when the proximate cause of the injury is the failure of the employe to use the instrumentality in the normal or proper way, that failure goes to the entire cause of action, not to a mere diminution of damages. Compare Aponaug Mfg. Co. v. Hammond, 185 Miss. 198, 187 So. 227.

Affirmed.