488 So.2d 797 (1986)
Fulton EVANS
v.
Andy JOURNEAY.
No. 55500.
Supreme Court of Mississippi.
May 14, 1986.
John H. Cox, Greenville, for appellant.
Roy D. Campbell, III, Campbell & DeLong, Greenville, for appellee.
Before ROY NOBLE LEE, P.J., and HAWKINS and SULLIVAN, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Fulton Evans filed suit in the Circuit Court of Washington County against Andy Journeay for personal injuries sustained when the left sleeve of his coat became entangled in the drive shaft of an Alis-Chalmers gleaner M2 combine. At the conclusion of the testimony for Evans, the lower court directed a verdict in favor of Journeay, and Evans has appealed to this Court contending that the lower court erred in granting the directed verdict.
The complaint charged that appellee was negligent in (1) failing to provide an adequate number of co-employees, (2) failing to provide proper and suitable supervision, (3) that the area in which appellant was required to work was unsafe and hazardous, and (4) failing to properly provide maintenance and repair to defects in the machinery of which he had knowledge or which reasonably should have been discovered and repaired. Appellee denied the allegations of the complaint and set up as an affirmative defense that appellant's negligence was the sole proximate cause of the accident and his injuries.
Without attempting to describe in detail the combine machine and its operation, for the purposes of this discussion, it is sufficient to state that the combine consisted of a front end, the header, and the rear, which was the body of the combine itself. In the front end, or header, near the front left tire, were situated the thresher beater chain drive (chain drive), and the fly wheel *798 with a part of the header drive shaft (drive shaft). The header machinery takes the stalks which are being cut and harvested and pulls them into the throat of the combine and thence into the rear of the combine, which separates the grain from the stalks. The rotating chain drive and drive shaft supply the power for cutting and pulling in the stalks to the combine. The drive shaft and the large left wheel of the combine were approximately 15 to 18 inches apart.
Appellant began work with appellee as his only full-time employee in 1982. In late August or early September of that year, appellee leased the subject combine and he and appellant discussed the fact that appellant would operate it. There follows the training, experience and familiarity of appellant with combines and other type machinery:
(1) Appellant was born and reared on a farm and lived on farms all of his life. He first began driving farm equipment when he was 10 years old and when he was approximately 20 years old he began driving cotton pickers and combines and has operated them for the past 18 or 19 years.
(2) After a sojourn in Florida picking fruit, he returned to the Mississippi Delta in 1966 and resumed farm work, driving farm equipment, including combines and cotton pickers. In 1979 he worked on a farm where he operated various types of farm equipment for three (3) years and, when the equipment broke down in the field, he would repair that equipment in the field himself.
(3) In 1980 and 1981, he worked for Hearn's Repair Shop in Arcola, Mississippi, which was the last job he held prior to going to work for appellee. At Hearn's Repair Shop he was responsible for repairing different types of farm equipment. His work at Hearn's required him to know and learn more about combines and cotton pickers and their operations. He made repairs to transmissions, headers, and different parts of combines. He understood how the drive shaft on a combine worked and knew that power to the header came to the drive shaft and that on combines, such as the one here, the drive shaft was located on the back side of the header.
(4) While working for Hearn's, he read various manuals on farm equipment, and used them in making repairs. He knew that the present combine had an unshielded drive shaft and he knew the danger involved in working around a running drive shaft and being exposed to one.
(5) Appellant admitted that any mechanic understands that one does not get near an exposed drive shaft when the shaft is turning and knew that if he was too near the drive shaft, it would snatch his clothing.
(6) Before beginning the operation of the subject combine, appellee obtained and furnished appellant with a manual which showed how it should be operated and lubricated. Appellant read and familiarized himself with the manual.
(7) Appellant serviced the combine by oiling the chains and greasing the parts with alemites, checking the water and cleaning the oil filter. He did some of that work daily and oiled the chains approximately twice a week.
(8) Prior to the accident, appellant serviced the chains on the combine by spraying them with an aerosol spray, with the combine turned off. He had not serviced the chain drive, the engine or the drive shaft while they were running. Appellant stated that appellee had never given him any instructions to oil the chain while the combine was running.
(9) Appellant had superior knowledge concerning the operation and repair of the subject combine to that of appellee.
The accident occurred on November 15, 1982. On the preceding day, appellant had run out of aerosol spray in lubricating the chains, but he had not informed appellee of that fact. Appellee had no knowledge that appellant was out of the spray, and, in the past, when appellant needed aerosol spray, he would either ask appellee to buy more for him or appellant would go to the store and buy the spray himself, charging it to appellee. On the date of the accident, appellee *799 passed by two farm supply stores that sold aerosol spray, but he failed to obtain the spray, explaining that he simply never thought about it.
Appellant picked up a co-employee, O.B. Wilson, and they drove to the field where the combine was parked, and began to ready for the day's work. Appellee was not present. Wilson first greased the combine with a grease gun while the machine was not running. When he had finished that job, appellant climbed up into the combine, cut the engine on and left both the chain drive and the drive shaft in gear. He stated that he wanted the chain drive running because he intended to oil it with a squirt bottle of gear oil, since he was out of spray, and in order to keep the oil from dripping off the chain drive onto the drive belt, it was necessary to have the chain drive running. He was aware that it was not necessary to have the header drive belt running at the same time.
Warnings were posted in the cab of the combine, and outside the combine cautioning the operator against lubricating any portion of the combine while the engine was running or while any parts were engaged. Appellant admitted that he knew about the warnings and the danger, and he always tried to follow those warning signs. He first oiled some of the chains on the back of the combine, and then he walked around to the front to oil the chain drive. Appellant was wearing a bulky Army coat, and he squeezed in between the left front tire and the header, while the drive shaft, with exposed coupling pin, was fully engaged and spinning. As stated, the space through which he entered was only 15 to 18 inches wide  so small that he was required to turn sideways, which he did by turning his back to the spinning shaft.
Appellant testified that, as he squeezed through the space, he was trying to be careful; that he knew it was dangerous; that he knew he had to avoid the spinning shaft and pin; that he squirted oil onto the chain drive and began to back out in the same position as when he entered; that he thought about the spinning shaft, but did not think about keeping his left sleeve away from it; and that his left hand got too close to the shaft, the pin grabbed his bulky coat sleeve and he was jerked down onto the shaft, cutting and breaking his arm.
In the hospital emergency room after the accident, appellant said to appellee, "Just a few minutes of carelessness was all it was." He added, "As long as I've been working around machinery, I knew better than to get up there with loose clothing on."

The Law
Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975), and decisions theretofore and thereafter state the principle of law applying to motions for directed verdicts. The Court said:
We have held many times that in passing on a motion for directed verdict the Court must look only to the testimony adduced for the plaintiff and accord truthfulness to it and indulge all favorable inferences that could be drawn therefrom, and if either is sufficient to support a verdict, then the motion for directed verdict should be overruled. We have also stated in considering a motion for directed verdict that it should be overruled even though a verdict in favor of the plaintiff would be contrary to the overwhelming weight of the evidence. King v. Dudley, 286 So.2d 814 (Miss. 1973).
319 So.2d at 655.
Even though a claimant may be guilty of negligence he still may recover from a defendant who is guilty of negligence, which proximately caused or contributed to that injury. Therefore, the question here is whether or not, on the motion for directed verdict, the appellant was guilty of negligence which was the sole proximate cause of the accident and his injury. We think that question must be answered in he affirmative. See Pargas of Taylorsville, Inc. v. Craft, 249 So.2d 403, 406 (Miss. 1971); Tombigbee Electric Power Ass'n v. Gandy, 216 Miss. 444, 62 So.2d *800 567 (1953); Kramer Service, Inc. v. Wilkins, 184 Miss. 483, 186 So. 625 (1939).
In Stewart v. Kroger Grocery Co., 198 Miss. 371, 21 So.2d 912 (1945), an employee was injured while attempting to use a box, which he was carrying, to push open a swinging door and the door struck a sack of towels on the far side, knocking the box back into the employee. The trial court granted the employer's request for a peremptory instruction and, in affirming the lower court, this Court said:
[I]t is not the duty of the employer to furnish and maintain perfect appliances or even the best and safest. He is not obliged to exercise the highest degree of care to avoid injuries, nor any care to avoid injuries not likely to occur. His obligation is to use reasonable care, and what is reasonable care is largely determined in each case by the nature, condition and extent of the danger of the instrumentalities furnished to and maintained for a servant and his work, and the greater or lesser the danger the greater or lesser is the degree of care which must be taken. His obligation is not to make the appliance with which, or the place in which, to work absolutely safe, but reasonably safe, the nature, condition and extent of the danger considered. And withal the employer is only liable for the want of reasonable care in guarding against injuries which may be reasonably foreseen as likely to occur when his employee uses the instrumentality in the usual and normal way that such an instrumentality is intended to be used and if the employee adopts another method or way, the injury is one for which he and not the employer is responsible. It is not the duty of the employer to guard against improper or unusual methods of use by an employee, unless the improper use has become habitual among employees and the employer knows it.
* * * * * *
... Would the injury complained of here have occurred had the employee used the instrumentalities in the proper and normal manner, to which the answer is in the negative; and since it was the employee who put in motion and followed through the improper use, the improper use became the proximate cause, relegating the condition of the sack to the position of a remote cause... .
198 Miss. at 377-78, 379, 21 So.2d 912.
We are of the opinion that the negligence of Evans in the lubrication of the subject combine was the sole proximate cause of the accident and his injury. Therefore, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.