# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-01825-SCT

*COHO RESOURCES, INC.*

*v.*

*MARION C. CHAPMAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/4/1999 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CLAYTON E. BAILEY |
| | DOUGLAS G. MERCIER |
| ATTORNEYS FOR APPELLEE: | GERALD PATRICK COLLIER |
| | LARRY STAMPS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 04/21/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Marion C. Chapman, an employee of independent contractor V.A. Sauls, Inc. (Sauls), sued Coho Resources, Inc., the oil well owner, another independent contractor hired by Coho and two individuals employed by the other independent contractor for negligence in connection with injuries he sustained when the tong line broke and collapsed the rig's floor.  Chapman's wife asserted a loss of consortium claim.  At the end of the plaintiffs' case-in-chief, the trial judge granted a directed verdict for the two individuals on the ground that they did not owe a duty to Chapman.  The trial court also dismissed the other independent contractor on the same

grounds. After a jury trial, the jury found for Chapman and awarded damages. Coho Resources, Inc. appeals to this Court. The disposition of the merits of this appeal has been delayed by Coho's bankruptcy and related litigation, *see In re Coho Resources, Inc.*, 345 F.3d 338 (5th Cir. 2003), as well as various motions filed in this Court.

¶2. We find that the verdict was against the substantial weight of the evidence as to the issue of whether Coho maintained substantial control over the work performed by Sauls. The evidence at trial showing that Chapman was negligent was uncontradicted, and the jury's verdict apportioning all fault to Coho was also against the substantial weight of the evidence. However, our primary reason for reversal here is the trial court's reversible error in refusing to instruct the jury to consider Sauls' negligence in apportioning fault between the participants. We reverse the judgment of the Circuit Court for the Second Judicial District of Jones County and remand this case for a new trial consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶3. V.A. Sauls, Inc., which has been established since 1948, performs oil well repairs by using workover well service rigs. In 1995, Coho Resources, Inc. hired Sauls to repair a submersible pump. To retain Sauls as an independent contractor, Coho called to inform Sauls that it had a well that was no longer pumping and needed repair. During this phone call Coho informed Sauls of the necessary repairs, the location of the well site, the name and directions to the well site, the dept of the well, and the type of tubing in the holes. The duties and responsibilities of Coho and Sauls were formalized into a written contract. The contract gave Sauls the duty to enforce all safety practices and to remove and replace any employee that proved unsatisfactory to Coho's representative. Sauls also had the duty to furnish all tools and

2

equipment necessary to accomplish the job. The contract further provided that all employees furnished by Sauls were the sole employees of Sauls and were not to be considered employees of Coho. The contract explicitly stated that Sauls was an independent contractor and Coho did not retain any control or direction over Sauls' employees but Coho did retain the right to reasonable access to the operations in order to inspect the work being performed. Coho also retained ultimate control over safety and reserved the right to dismiss Sauls' personnel or terminate the contract if a complete safety program was not followed.

¶4. The equipment Sauls had a duty to furnish included a mobile workover rig which Sauls moved from location to location. Equipment on Sauls' workover rig included: a large crane to hoist the pipe and the block, slips to hold the pipe, elevators that attach to the pipe, tongs that make up and break it out, rod tools to pull and run rods, tubing handling tools such as backups and a couple of 36-inch pipe wrenches. Every workover rig owned by Sauls contained this equipment. A list of equipment that Sauls were required to have on this particular job was listed in an exhibit to the contract. However, the contract explicitly stated that Sauls was not limited to furnishing the tools and equipment listed in the exhibit.

¶5. For this particular job where the accident occurred, Sauls' workover crew consisted of Foster Herrington -- the toolpusher (rig supervisor); Bruce Ivy – rig operator and relief toolpusher; Greg Herkenstein -- derrickhand; Marion C. Chapman -- floorhand; and

Bryan Hoze -- floorhand. All were employed by Sauls.

¶6. The purpose of this workover job was to remove tubing to allow access to the submersible pump that was located at the bottom of the tubing. Sauls' crew would set up their workover rig and would begin to pull the tubing out of the well. The tubing would be in thirty-

foot sections connected in the middle by what is know as the tubing collar. Sauls' rig elevator pulled the tubing out of the well, the collar was brought up to the general area of just above the rig floor and then the crew would use a backup tong, if it was the right size, to grip the tubing collars while the top stand of the tubing pipe was twisted out of the tubing collars. The crew used the back up tong to hold the tubing collars so the tube string in the well would not turn as the top pipe turned. They would use the back up tongs to pull the tubing out of the well, and they would then disconnect the tubing as it came out of the well. Sauls had the backup tongs that would fit a two 3/8's inch or two 7/8's inch tubing but did not have one large enough to fit the 3 ½ inch tubing. If the size of the tubing was 3 ½ inch, it was Sauls' policy and 50-year standard of practice to use a 36-inch pipe wrench to hold that tubing collar in place while the top piece of the pipe was twisted out. Sauls' standing operating procedure since it was established was not to have the correct backup tongs for 3 ½ inch tubing. Based upon standards and customs in the industry, using the 36-inch pipe wrench is an accepted alternative method to using the backups.

¶7.     On August 18, 1995, Chapman was injured while working on the workover rig. The tubing on this particular well site was 3 ½ inch tubing so Sauls had a 36-inch pipe wrench as a backup. During this particular job the pipe wrench got stuck on the pipe collar several times that day. The first time the pipe wrench got stuck, Chapman used a sledge hammer, which was the proper procedure to free a 36-inch pipe wrench. In order to free a 36-inch pipe wrench, the floorhand would take the hammer and strike the wrench on one side; if that still did not work, he would strike it another way. After two or three strikes, the pipe wrench would normally come off of the tubing. Earlier in the day, before this accident, Chapman had

attempted to use the tongs to draw the 36-inch pipe wrench loose, and Ivy asked him not to use this method because it was putting to much pressure on the cables. Ivy stated that he was worried about breaking the cable, which is exactly what happened during the accident. At the time of the accident, Chapman had unsuccessfully tried to free the pipe wrench with the sledge hammer. Chapman then pushed up and down on the lever and picked the tongs up against the pipe wrench. Chapman took the tongs, attached them to the 36-inch pipe wrench and started pulling against, which caused the cable holding the tongs to break and fall onto the rig floor. When the tongs fell to the rig floor, the floor collapsed and sent Chapman and Hoze to the ground ten to fifteen feet below.

¶8.    Chapman was an employee of Sauls at the time of the accident, and Sauls, as required by the contract with Coho, carried Mississippi Workers' Compensation insurance. On March 19, 1998, Chapman filed this lawsuit in the Circuit Court for the Second Judicial District of Jones County, Mississippi, against Coho for injuries he sustained while performing the oil well repair work in connection with the contract for services between Coho and Sauls. In addition to filing claims against Coho, Chapman also sued another independent contractor, Centrilift-Hughes, Inc., which was on the premises at the time of the accident as well as two of Centrilift's employees. Chapman did not sue his employer, Sauls, because it is a participant in Mississippi's workers' compensation system.

¶9.    Prior to trial, Coho filed a motion for summary judgment claiming that it owed no duty to Chapman because he was an employee of an independent contractor at the time of the accident. Coho's motion was denied on the grounds that a fact issue existed as to whether Coho "negligently instructed the Plaintiff to use a 36 inch pipe wrench to make repairs."

¶10.    The case went to trial on May 15, 1999.    When Chapman rested after submitting evidence, Coho, Centrilift and the two employees moved for directed verdicts on the grounds that they owed no duty to Chapman.    The trial court denied Coho's and Centrilift's motions, but granted the two employees' motion.    During Coho's case-in-chief and after one witness, the trial court dismissed Centrilift from the lawsuit on the grounds that it owed no duty to Chapman.    At the close of the trial, Coho again moved for a directed verdict which was denied by the trial court.    After deliberation, the jury returned a split 9-3 verdict awarding Chapman $1,653,930.00 in damages against Coho.    The jury found that Coho was liable and did not apportion any fault to Chapman.    The trial court subsequently denied Coho's motion for judgment notwithstanding the verdict, or in the alternative, for a new trial.    The trial court granted Coho's motion to alter or amend the verdict and final judgment and for a remittitur. Chapman agreed to the remittitur, and the jury's award was reduced to $853,930.00.    Coho now appeals to this Court raising the following contentions:

1.    The trial court erred in denying Coho's motions for directed verdict and JNOV because Coho did not exercise control over the work.

2.    The trial court erred in denying Coho's motion for new trial because the verdict is so contrary to the overwhelming weight of the evidence because Coho neither retained *de jure* nor *de facto* control over the details of the work.

3.    The trial court erred in denying direct verdict and JNOV because the injuries were sustained while performing work the contractor agreed to perform for Coho.

4.    The trial court erred in denying Coho's motion for new trial because the injuries were sustained while performing work the contractor agreed to perform for Coho.

5.    The trial court erred in denying motion for direct verdict and JNOV because evidence proves that Chapman has actual and constructive

6

knowledge that his conduct would create the dangerous condition that led to his injuries.

6.  The trial court erred in denying motion for new trial because the overwhelming weight of the evidence proved that Chapman knew of the dangerous condition he created by misusing the Contractor's equipment.

7.  The trial court erred in denying motions for directed verdict and JNOV because the evidence showed Chapman was in the best position to eliminate the dangerous condition he created while misusing the Contractor's equipment.

8.  The trial court erred in denying motion for new trial because the overwhelming weight of the evidence proved that Chapman was in the best position to prevent his injury.

9.  The Court should reverse and remand because the overwhelming weight of the evidence contradicts the verdict finding that Chapman was not contributorily negligent.

10. The trial court committed reversible error by refusing to instruct the jury to consider the Contractor's negligence in apportioning fault between the participants to the incident giving rise to Chapman's personal injuries.

## DISCUSSION

¶11.   For the sake of brevity, the first eight issues can be combined into two issues with one for the denial of the directed verdicts and JNOV and the second for the denial of the new trial.

I.    **Did the trial court err in denying Coho's motions for directed verdict and JNOV?**

¶12.   The standards of review for a denial of a directed verdict and JNOV are identical. This Court has stated that:

Under this standard, this Court will consider the evidence in light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other

7

hand if there is substantial evidence in support of the verdict, that is evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.

*Coho Resources, Inc. v. McCarthy,* 829 So. 2d 1, 8-9 (Miss. 2002) (citing *GMAC v. Baymon*, 732 So. 2d 262, 268 (Miss. 1999)).

¶13. Coho argues that it is entitled to have the final judgment reversed and rendered because it is not liable for the injuries of Chapman. Coho asserts four different arguments and claims that the trial court erred in denying the motions for direct verdict and JNOV because: (1) Coho did not exercise control over the work; (2) Chapman's injuries were sustained while performing work the contractor agreed to perform for Coho; (3) the evidence proves that Chapman had actual and constructive knowledge that his conduct would create the dangerous condition that led to his injuries; and (4) the evidence showed that Chapman was in the best position to eliminate the dangerous condition he created while misusing Sauls' equipment.

### *(1) Control over the work*.

¶14. Coho argues that it is not liable because it did not maintain de facto nor de jure control over the work that Sauls was performing. Where a party such as Coho contracts with another such as Sauls to perform the repair work, the "owner has no liability for injuries experienced by the contractor's workers where those injuries arose out of or were intimately connected with the work." *Magee v. Transcontinental Gas Pipe Line Corp.*, 551 So. 2d 182, 185 (Miss. 1989). The critical question is "whether the project owner maintains any right of control over the performance of that aspect of the work that has given rise to the injury." *Id.* at 186. When determining this the "undisputed language of the contract becomes important." *Id.* However,

8

if Chapman can show that "the contract notwithstanding, the owner maintained substantial de facto control over those features of the work out of which the injury arose, we may have a horse of a different color." *Id.*

¶15.    Here, under its contract with Coho, Sauls assumed full and complete responsibility for the conditions pertaining to the work, the site of the work, and the care and maintenance of the work.  The contract clearly stated that Sauls was an independent contractor, and Coho had no direction or control over Sauls or its employees.  Coho did maintain reasonable access to the work-site.  Coho also reserved the right of dismissal of Sauls' personnel or termination of the contract if a complete safety program was not followed.  The contract also specified a "day rate" or hourly rate for the work.  Although the control of the workover had been vested in Sauls in one part of the contract, clearly Coho retained the ultimate authority for safety.

¶16.    However, the testimony at trial was contradictory on the issue of whether Coho retained substantial de facto control.  The two employees of Centrilift testified that Coho did not instruct Sauls nor did they instruct Chapman.  Chapman and Bryan Hoze, both employees of Sauls, testified that the two employees who were under the control of Coho instructed them to use the 36 inch pipe wrench and also instructed Sauls to give the tongs more throttle in order to break the joint and free the pipe wrench.  Bruce Ivy, the supervisor of the rig who worked for Sauls, testified that no one gave him or his employees instructions and that it was his sole decision to use the pipe wrench.  He also testified that Glenn Ainsworth, Coho's representative, was at the well site at the beginning of the day and was in and out for the rest of the day and never gave them instructions on how to do the job.

¶17. Jimmy Barber, an expert retained by Chapman, testified that in his opinion and based upon his experience the operator/owner of the well retains control over the operation at all times, Ainsworth should have discussed the operation with Sauls, and Ainsworth should have stopped the operation so that the correct tools can be delivered. However, on cross Barber stated that he did not know what the responsibilities were between Coho and Sauls and that he was just stating his opinion based on his experience. However, Coho's witnesses testified that any man working on the rig, including Chapman, could have shut the operation down if it was unsafe. According to Joseph Boyd, who was the operator/manager for Sauls, there has to be a method where anyone can shut it down automatically if it becomes unsafe. Furthermore, George Coley, an expert retained by Coho, stated that there is rarely on-the-site supervision during the job and the owner, Coho, would not maintain control over the rig floor.

¶18. In *McCarthy*, this Court stated that the "owner is liable to employees of an independent contractor for his own negligence" when they are under a duty to provide proper supervision. 829 So. 2d at 13. Here, the contract stated that Coho could stop any work that was not being performed safely, and Chapman's expert testified that Coho's representative should have supervised the job and stopped it once he determined that the proper tools were not being used. However, there was also testimony that anyone could shut the operation down, including Chapman and any of Sauls' employees. In fact, there was testimony from the manager of Sauls that there must be a method in which any man could shut down the operations automatically upon request. Some testimony at trial demonstrated that Coho at times retained substantial control, but there was also testimony that was in direct conflict and demonstrated that Coho did not retain substantial control.

¶19.   While the general rule is that the owner of the premises does not have a duty to protect an independent contractor against risks arising from or intimately connected with the work, there is an exception where the owner maintains substantial de jure or de facto control over the work to be performed.   The contract and the contradictory testimony at trial sufficiently created a jury question as to whether Coho retained substantial control over the workover site. Therefore, we find that the trial court did not err in denying Coho's motion for directed verdict and JNOV.

### (2) Chapman's injuries were sustained while performing work the contractor agreed to perform for Coho.

¶20.   Coho next argues that it owed no duty to Chapman because the evidence proves that it did not exercise any control over that *portion* of the work during which Chapman sustained his injuries.   This issue is almost the same as the above issue.   In the above issue, Coho argues that it did not maintain control over the entire job while this issue is dealing with the particular job Chapman was performing.   As discussed above, the contract and the contradictory testimony at trial sufficiently created a jury question as to whether Coho retained substantial control over the workover site or the job that Chapman was performing for Sauls.   We find that the trial court did not err in denying Coho's motion for directed verdict and JNOV.

### (3) Chapman's knowledge that his conduct would create the dangerous condition that led to his injuries.

¶21.   Coho argues that even if it owed a duty to Chapman, his lawsuit is barred because an independent contractor's knowledge of a defect absolves the landowner of liability and that if

an independent contractor has actual or constructive knowledge of a dangerous condition, its employees cannot recover against the owner.

¶22.    This Court has concluded that the "owner is not an insurer of the invitee's safety, and he is not liable for injuries which are not dangerous or which are, should be known to the business invitee." *Jones v. James Reeves Contractors, Inc.*, 701 So. 2d 774, 782 (Miss. 1997) (citing *Jackson Ready-Mix Concrete v. Sexton*, 235 So. 2d 267, 270 (Miss. 1970)). This Court went further and stated that "the owner or occupier is under no duty to protect them (contractors) against risks arising from or intimately connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair." *Id.*    In *Jones*, this Court held that since "McCaskil Brothers had unfettered control over that portion of the work which gave rise to the injury, the excavation of the hole, Howard is absolved of responsibility under *Magee* as well as *Jackson Ready-Mix Concrete*." *Id.* at 783.


¶23.    However, this Court in *McCarthy*, stated that

> if Coho had been a detached owner who had merely contracted with Smith
> Brothers to have them perform the workover with unfettered control, then Coho
> would only have the duty to warn of dangerous conditions unknown by Smith
> Brothers.    However Coho was not just a detached owner who hired an
> independent contractor to perform some work.    Coho provided Smith Brothers
> with a prognosis that detailed, step-by-step, how to perform the work.    Coho had
> a company man at the work site and retained substantial control over the job.
> Coho's district production manager, Gerald Ruley, admitted that it had a duty to
> provide a safe work site.

829 So. 2d at 14.    This Court in *McCarthy* held since Coho retained substantial control it had a duty to warn of dangerous conditions and to supervise in a safe manner. *Id.*    But, as stated

12

previously, the testimony here is contradictory on whether Coho retained substantial control over the work performed by Sauls. Here, if Coho retained substantial control over the work performed, then it would have a duty to warn of dangerous conditions and to supervise in a safe manner, but if Coho did not have substantial control, then it only had a duty to warn of dangerous conditions unknown to Sauls. Since this issue turns on whether Coho retained substantial control, and the testimony as to that issue is conflicting, this sufficiently created a jury question as to whether Coho retained substantial control over the work. Therefore, we find that the trial court did not err in denying Coho's motions.

### (4) Chapman's position to eliminate the dangerous condition he created while misusing the Contractor's equipment.

¶24. Coho argues that judgment should be rendered in its favor because the evidence proves that Chapman was in the best position to prevent his injury. This Court has held that "the party in the best position to eliminate a dangerous condition should be burdened with that responsibility." *Vu v. Clayton*, 765 So. 2d 1253, 1256 (Miss. 2000) (citing *Tharp v. Bunge Corp.*, 641 So. 2d 20, 25 (Miss. 1994)). In *Vu*, this Court stated that "because reasonable jurors could not have found that either Clayton or Xuan had knowledge of the allegedly dangerous condition, we find that the trial court correctly directed the verdict in their favor." *Id.* at 1256. This Court reasoned that the contractor with years of experience in performing attic repair work and who had actually been there numerous times was in a better position to evaluate hazards and risks than the owners who had never been in the attic. *Id.*

¶25. Here, there is no dispute that Sauls has fifty years' experience in this type of repair work. There is testimony that Chapman knew what he was doing was dangerous because he told

13

Hoze to move out of the way. There was also testimony that when Chapman tried to free the pipe wrench with the tongs, his supervisor told him numerous times to stop. Furthermore, there is ample evidence to show that Chapman had used the pipe wrench on many occasions prior to the accident. There is also evidence that Sauls used the pipe wrench for 3 ½ inch tubing for fifty years.

¶26. However, there remains a question as to whether Coho maintained control over the premises and had a duty to supervise and give instructions to Sauls. There is contradictory testimony as to whether Coho instructed Chapman to use the pipe wrench or whether Coho should have been on the site to supervise the work and to shut it down if it saw Chapman using the pipe wrench. There was also conflicting evidence as to whether it was Coho's duty to shut down the job if it was not being done safely or if anyone at the site could shut down the operation to eliminate the dangerous condition. We find that these contradictions sufficiently created a jury question as to who was to shut down the operation to elevate the dangerous condition. We find that the trial court did not err in denying Coho's motions.

¶27. Coho has asserted several reasons why the trial court's denial of its motions for JNOV and directed verdicts were improper. However, this Court concludes that the contradictory evidence sufficiently created a jury question. Furthermore, according to the standard of review, this Court reviews the evidence in the light most favorable to the verdict and if reasonable and fair-minded jurors might have reached different conclusions, affirmance is required. There is evidence in support of the verdict when considering the evidence in the light most favorable to Chapman, giving him the benefit of all favorable inferences that may be reasonably drawn from the evidence. There was sufficient evidence to present a jury question.

14

Therefore, we hold that the trial court did not err in denying Coho's motions for JNOV and directed verdict.

**II.     Did the trial court err in denying Coho's motions for a new trial**?

¶28.    Motions for a new trial are made pursuant to M.R.C.P. 59.  Trial courts have authority to grant a new trial, where, in the exercise of their sound discretion, they regard such a verdict as being contrary to the substantial weight of the evidence.  *Dupree v. Plantation Pointe, L.P.*, 892 So. 2d 228, 232 (Miss. 2004) (citing *C&C Trucking Co. v. Smith*, 612 So. 2d 1092, 1099 (Miss. 1992)).  A denial of a request for new trial will be reversed only when it amounts to an abuse of that judge's discretion.  *Id.* (citing *Maxwell v. Ill. Cent. Gulf R.R.*, 513 So. 2d 901, 908 (Miss. 1987)).  This Court "should give substantial weight, deference and respect to the decision of the trial judge in matters such as this."  *Id.*  A new trial may be granted where the verdict is against the overwhelming weight of the evidence, or when the jury has been confused by faulty instructions, or when the jury has departed from its oath and its verdict is a result of bias, passion, and prejudice.  *Id.* at 235 (citing *Griffin v. Fletcher*, 362 So. 2d 594, 596 (Miss. 1978)).

¶29.    Coho argues that trial court erred in denying its motion for a new trial because the verdict is contrary to the substantial weight of the evidence.  Coho asserts the same four arguments as above and claims that the overwhelming weight of the evidence proves that: (1) Coho did not exercise control over the work; (2) Chapman's injuries were sustained while performing work the contractor agreed to perform for Coho; (3) the evidence proves that Chapman had actual and constructive knowledge that his conduct would create the dangerous condition that led to his injuries; and (4) the evidence showed that Chapman was in the best

position to eliminate the dangerous condition he created while misusing the contractor's equipment.

¶30. The first point is dispositive of all four arguments. There is contradictory evidence regarding the issue of control and this contradictory testimony sufficiently created a jury question. However, when looking at the weight of the evidence, it is clear that the verdict is contrary to the substantial weight of the evidence. This Court discussed the issue of substantial control in *Magee v. Transcontinental Gas Pipe Line Corp.*, 551 So. 2d 182 (Miss. 1989). In *Magee*, the contract provided that the contractor "assume[d] full and complete responsibility for" the "conditions pertaining to the Work, the site of the Work or its surroundings, and all risks in connection therewith." *Id.* at 184. The contractor also assumed responsibility for the care and maintenance of the work until completed and accepted by the owner. *Id.* at 185. Moreover, the contractor also obligated itself to "take all necessary precautions for the safety of its employees." *Id.* The contractor also maintained control over the safety of the worksite, the manner of the work and they were to supply all the tools and employees needed for the job. *Id.* There was also testimony from the owner's on-site inspector, stating that the contractor had control over the methods and manner in which it was done. *Id.* The owner would merely inspect periodically the work of the contractor's employees. *Id.* This Court held that the owner did not retain substantial control over the operations even though they could inspect the work. *Id.* at 186.

¶31. This Court again dealt with the issue of substantial control in *Coho Resources, Inc. v. McCarthy*, 829 So. 2d 1 (Miss. 2000). In *McCarthy* the contractors assumed full and

16

complete responsibility for the conditions pertaining to the work, the site of the work, and responsibility for the care and maintenance of the work. *Id.* at 11. The contract in *McCarthy* also stated that the contractor was an independent contractor, and that Coho had no direction or control over the contractor or its employees. *Id.* The Court also noted that as in *Magee* "Coho retained the right to reasonable access to the work-site." *Id.* However, this is where *McCarthy* differed from *Magee*. In *McCarthy*, Coho reserved the right of dismissal of contractor's personnel or to terminate the contract if complete safety program was not followed. *Id.* Furthermore, testimony revealed that Coho did maintain substantial control over the operation. *Id.* The contractor's employees had to follow the orders of Coho and its company man on the site and Coho also provided a step-by-step procedure that it had to follow in completing the work. *Id.* The contract also specified a day or hourly rate. *Id.*

¶32. Here, in the case sub judice, Coho did not maintain as much control over Sauls as it did over the independent contractor in *McCarthy*. The contract between Sauls and Coho stated that Sauls assumed full and complete responsibility for the conditions pertaining to the work, the site and responsibility for the care and maintenance of the work. The contract clearly stated that Sauls was an independent contractor and that Coho did not have any direction or control over Sauls. Pursuant to the contract, Sauls was to provide its own equipment and employees needed for the job. However, the contract, as in *McCarthy*, gave Coho the right to dismiss Sauls' personnel if the safety procedures were not followed. The contract also specified a day and hourly rate and Coho did have reasonable access to the operations.

17

¶33.   If Chapman can show that "the contract notwithstanding, the owner maintained substantial de facto control over those features of the work out of which the injury arose, we may have a horse of a different color." *Magee*, 551 So. 2d at 185.  The testimony at trial was contradictory as to whether Coho retained substantial control over the workover job, but the weight of the evidence shows that Coho did not retain substantial control.   First of all, Chapman presented testimony that he was instructed to use the 36-inch pipe wrench.  However, there was ample testimony by several witnesses that using the 36 inch pipe wrench was the standard and common practice in industry and was also Sauls' practice to use the 36-inch pipe wrench for this type of tubing.  Furthermore, Chapman used the 36-inch pipe wrench on several occasions and always used it for 3 ½ inch tubing.   There was also testimony that Coho's representative was there at the beginning of the job but was not there at the time of the accident and that Coho never instructed Sauls as to the method of the work.  The only evidence that was presented to show that Coho had control was that of Chapman's expert witness, Jimmy Barber. Barber testified that in his opinion the operator's duties, based on his experience, was to be in direct control of the operation at all times and was responsible for the safety and well-being of all personnel on their location.   Barber stated that Coho's representative should have discussed the operation with Sauls and should have stopped the operation when he noticed they were not using the proper backup.  However, on cross-examination, he admitted that he did not know what the responsibilities were between Coho and Sauls because he never spoke to Coho. Barber further stated that this was just his opinion, based on his experience, as to what should be the owner's responsibilities.   There were also several witnesses who stated that there is

18

always a method by which any man on the rig floor can shut down the operation if it becomes unsafe or dangerous.

¶34.    In *Magee*, the owner only had reasonable access to the operation and this Court concluded that this was not enough. 551 So. 2d at 186-87. However, in *McCarthy*, this Court noted that the owner had more control. 829 So. 2d at 11-13. There, the owner maintained control over the safety and could terminate the contract or dismiss the contractors personnel, they gave orders to the contractor along with a step-by-step procedure to follow and the contract also specified a day or hourly rate for the work. *Id.* Here, the contract did specify a day or hourly rate and Coho did have the right to dismiss Sauls' personnel or terminate the contract if the safety procedures were not followed. However, the substantial weight of the evidence was that Coho did not instruct Sauls as the manner of the job and that Coho was not there at the time of the accident. The trial judge specifically denied Coho's motion for summary judgment on the grounds that a fact issue existed as to whether Coho "negligently instructed the Plaintiff to use a 36-inch pipe wrench to make repairs." There was uncontradicted testimony that Sauls' 50-year practice was to use the pipe wrench as a back up to make the repairs. Furthermore, there was also testimony that using the pipe wrench as a back up was an alternate method.

¶35.    The fact that Coho had authority over safety and the contract specified a day or hourly rate is not *substantial* control. Substantial is defined as "of real worth and importance; of considerable value; valuable." Black's Law Dictionary 1597 (4th ed. 1968). The testimony in this case does not show that the control was substantial or of considerable value. The two facts that go towards control are not substantial when compared with the evidence that shows Coho

19

did not retain control over the operation. The verdict was against the substantial weight of the evidence, and we find that the trial court erred in denying Coho's motion for a new trial.

### III. Whether the Court should reverse and remand because the overwhelming weight of the evidence contradicts the verdict finding that Chapman was not contributorily negligent.

¶36. Mississippi is a pure comparative negligence state. Miss. Code Ann. § 11-7-15 (Rev. 2004); *Blackmon v. Payne*, 510 So. 2d 483, 486 (Miss. 1987); *Evans v. Journeay*, 488 So. 2d 797, 799 (Miss. 1986); *Bell v. City of Bay St. Louis*, 467 So. 2d 657, 664 (Miss. 1985). Under the comparative negligence doctrine, negligence is measured in terms of percentage, and any damages allowed shall be diminished in proportion to amount of negligence attributable to the person for whose injury, damage or death recovery is sought. *Burton ex rel. Bradford v. Barnett*, 615 So. 2d 580, 582 (Miss. 1993). Where negligence by both parties is concurrent and contributes to injury, recovery is not barred under such doctrine, but plaintiff's damages are diminished proportionately, even to the extent that negligence on the part of the plaintiff was ninety percent (90%) and on the part of the defendant was ten percent (10%), the plaintiff would be entitled to recover theoretically that ten percent. *Id.* Therefore, a plaintiff, though himself negligent, may still recover from a defendant whose negligence contributed to his injuries. *Blackmon*, 510 So. 2d at 486. Comparative negligence thus diminishes, but does not bar recovery. *Bell*, 467 So. 2d at 664.

¶37. Here the jury found Coho was fully responsible and did not apportion any fault to Chapman. Coho argues that this finding was contrary to the weight of the evidence and this Court should reverse and remand for a new trial. The right of the court to grant a new trial whenever convinced from the evidence that the jury has been partial or prejudiced, or has not

20

responded to reason after a full hearing of the testimony, was recognized under the common law; and the duty of the court to grant a new trial in such case is so well settled that no court may refuse to exercise such power when fully convinced of its duty to do so. ***Belk v. Rosamond***, 213 Miss. 633, 57 So. 2d 461, 465 (1952). Here, the trial judge specifically asked, after the verdict had been read, about apportioning fault to Chapman. The judge asked the jury, "it is my understanding that the jury did not apportion any fault to Mr. Chapman in the case?" Furthermore, after the jury had been polled and sent out, the judge stated that

> there's a lot of things in this verdict that the Court is not satisfied with. So, ya'll look at it yourself and see what would disturb me. Then if you want me to go through them at this time so you know what I am looking at, I'll be glad to go through them with you. There's some of the things in there that the jury considered like – where is the verdict?
> . . .
> I know they will be making a motion for a new trial. And they'll be making a motion for remittitur. So that's why I want you to consider what I am saying here. The jury didn't allow anything as far as Mr. Chapman's concern, as far as comparative negligence. And I think you all will have to agree at this point – or you'll have to *look at the fact that he was negligent*. I don't understand . . .

(emphasis added). It is noteworthy that the trial judge acknowledged that Chapman was negligent but the jury failed to apportion any fault to Chapman. However, even after noting this on the record, the trial judge failed to grant a new trial, but instead reduced the damages that had been awarded to Chapman.

¶38. The verdict in this case, as to the negligence of Chapman, was substantially against the weight of the evidence. First of all, even if Chapman was instructed by Coho to use the 36-inch pipe wrench as a backup, there was ample uncontradicted testimony that it was Sauls' standard practice to use the pipe wrench as a backup. There was also testimony that using the 36-inch pipe wrench was an alternative backup in the industry. Furthermore, Chapman's own expert

21

witness stated on cross that one of the causes of the accident was the misuse of the 36-inch pipe wrench. Chapman's own expert testified that Chapman misused the pipe wrench and the way he tried to free it was dangerous, which caused the accident. Furthermore, there was testimony that Chapman has properly used the pipe wrench on many jobs prior to this accident and had also used it several times on the day of the accident. Coho's expert witness also testified that the way Chapman was using the pipe wrench on these occasions was not a safe method. The fact that Chapman was misusing the pipe wrench in a dangerous fashion was uncontradicted.

¶39. The trial judge even noted that Chapman was negligent. The evidence at trial showing that Chapman was negligent was uncontradicted and his own expert testified to this fact. The failure of the jury to apportion any fault to Chapman was against the substantial weight of the evidence. The trial judge admitted that Chapman was negligent and erred in denying a new trial.

IV. **Refusal to instruct the jury to consider Sauls' negligence in apportioning fault between the participants to the incident giving rise to Chapman's personal injuries.**

¶40. Coho argues that the trial court committed reversible error by refusing to instruct the jury to consider Sauls' negligence in apportioning fault for Chapman's injuries. Coho claims that the trial court's refusal to include Sauls in the apportionment of fault is in direct conflict with our law. Chapman argues that even though this Court overruled *Accu-Fab & Construction, Inc. v. Ladner*, 778 So. 2d 766 (Miss. 2001), the result in this case would not change because Chapman was included in the apportionment process and the jury allocated zero fault to him. However, Chapman fails to note that the jury wanted to include Sauls in the

22

apportionment process. The jury specifically sent a note to the judge wanting to know why Sauls could not be considered. The court responded to the jury's question and told that jury that "if the jury will read the instructions that have been given by the Court, they will find an instruction that deals with the problem or the question that they've submitted to the Court."

¶41. In *Estate of Hunter v. General Motors Corp.*, 729 So. 2d 1264, 1273 (Miss. 1999), this Court held that "party" in the statute swept broadly enough to bring in entities which would not or could not have been "parties to a lawsuit." This Court went further to note that "section 85-5-7 requires that the fault of *all participants to the occurrence*, including any absent tortfeasors, must be considered in the apportionment of fault." *Id.* (emphasis in original). This Court declared

> [t]his State's system of civil justice is based upon the premise that all parties to a lawsuit should be given an opportunity to present their versions of a case to a jury, and the interpretation of § 85-5-7 urged by the plaintiffs [i.e., excluding those parties not in the suit] would **seriously infringe upon a defendant's rights in this regard in many cases.**

*Id.* at 1274 (emphasis added). Furthermore, this Court in *Mack Trucks, Inc. v. Tackett*, 841 So. 2d 1107 (Miss. 2003), reiterated this by holding that a party which is immune from liability, including an employer which is immune by virtue of workers' compensation law, may be assessed fault under the allocated fault statute. This Court stressed the fact that

> to immunize employers from fault allocation in third-party tort suits would go against the spirit of the bargain between employers and employees that underlies workers' compensation; instead, the third party would pay the employer's cost of compensation, and the employer would have the possibility of recovering in tort for his employer's fault, since that would then be allocated to the third party. This certainly would benefit employers, and to some extend plaintiffs – but third parties should not be assessed to supplement our system of workers' compensation.

*Id.* at 1115.

¶42.     The jury was obviously confused by the faulty instructions.   We find that the trial judge erred in refusing to allow the jury to allocate fault to Sauls.   Sauls, although immune from the lawsuit under the workers' compensation law, should be included in the apportionment of fault. On remand the jury shall be instructed to consider Sauls in the apportionment of fault.

### CONCLUSION

¶43.     This Court finds that the jury's verdict was against the substantial weight of the evidence because the weight of the evidence in this case does not show that Coho maintained substantial control over the operation.   The evidence at trial showing that Chapman was negligent was uncontradicted and the jury's verdict apportioning all fault to Coho was also against the   substantial weight of the evidence.   However, our primary reason for reversal here is the trial court's reversible error in refusing to instruct the jury to consider Sauls' negligence in apportioning fault between the participants.   Therefore, we reverse the judgment of the Circuit Court for the Second Judicial District of Jones County and remand this case for a new trial consistent with this opinion.

¶44.     **REVERSED AND REMANDED.**

**WALLER AND COBB, P.JJ., EASLEY, CARLSON AND RANDOLPH, JJ., CONCUR.   DICKINSON, J., CONCURS IN RESULT ONLY.   GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.   DIAZ, J., NOT PARTICIPATING.**